**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

MELVINA LEWIS,

      Movant,

   v.

UNITED STATES OF AMERICA,

      Respondent.

CIVIL ACTION NO.: 2:18-cv-58

(Case No.: 2:16-cr-12)

## ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Movant Melvina Lewis ("Lewis"), who is currently housed at the Federal Correctional Institution in Tallahassee, Florida, filed a 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence, as supplemented.  Docs. 1, 10.  The Government filed a Response.  Doc. 5. Lewis also filed a Motion to Supplement and a Motion for Relief from Judgment, to which the Government responded.  Docs. 9, 10, 11, 14, 16.  For the reasons which follow, I **RECOMMEND** the Court **DENY** Lewis' § 2255 Motion and Motion for Relief from Judgment, **DIRECT** the Clerk of Court to enter the appropriate judgment of dismissal and **CLOSE** this case, and **DENY** Lewis *in forma pauperis* status on appeal and a Certificate of Appealability.  I **DENY as moot** Lewis' Motion to Supplement, doc. 9, as the Court already granted Lewis leave to supplement, doc. 8.  However, the Court has considered the grounds set forth in Lewis' Supplement, doc. 11, in its analysis of Lewis' claims.[1]  I also **DENY** Lewis' request for an evidentiary hearing.  Doc. 10.

---

[1]    Lewis often provides no more than a sentence to make her claims, particularly in her initial § 2255 Motion.  The Court has analyzed her claims with as much specificity as possible.

**BACKGROUND**

Lewis was charged and indicted with 18 co-defendants in a 30-count indictment with conspiracy to possess with intent to distribute cocaine base (crack), in violation of 21 U.S.C. § 846 (count 1); conspiracy to use, carry, or possess firearms, in violation of 18 U.S.C. § 924(o) (count 2); and two counts of possession of cocaine base ("crack") with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (counts 8 and 28).  United States v. Lewis, 2:16-cr-12 ("Crim. Case"), Doc. 3.  Lewis' appointed attorney, Jason Clark, filed several pre-trial motions on Lewis' behalf.  Crim. Case, Docs. 92–96.  Lewis and Mr. Clark were able to negotiate an agreement by which Lewis agreed to plead guilty to the conspiracy to possess with intent to distribute controlled substances, including 500 grams or more of cocaine and 280 grams or more of cocaine base (crack) (count 1) count.  Crim. Case, Doc. 580.  In exchange, the Government agreed to: not object to a recommendation Lewis receive a three-level reduction for acceptance of responsibility, if made; not file a 21 U.S.C. § 851 enhancement, if applicable; move the Court to dismiss the remaining counts against Lewis; not recommend a sentence greater than 25 years' imprisonment, if Lewis complied with the terms of her plea agreement; and file a U.S.S.G. § 5K1.1 or Rule 35 motion for sentence reduction, if applicable.  Id. at 2–3.  The Honorable Lisa Godbey Wood held a change of plea, or Rule 11, hearing but stopped the hearing after Lewis stated she had a learning disability and had been diagnosed with bipolar disorder and schizophrenia.  Crim. Case, Doc. 290; Doc. 829 at 6–9.  Judge Wood ordered Lewis be sent to a federal facility for a psychological evaluation.  Crim. Case, Doc. 829 at 9; Doc. 291.  After receipt and review of Lewis' psychological report, Crim. Case, doc. 518, the Court determined Lewis was capable of understanding the charges against her and meaningfully consulting with her attorney and found Lewis was competent to stand trial.  Crim. Case, Docs. 532, 560.  Judge

Wood then resumed Lewis' sentencing hearing, noting Lewis was diagnosed with malingering, or "gross exaggeration or fabrication of psychological symptoms to avoid a legal consequence." Crim. Case, Doc. 830 at 3.  During the plea hearing, Brunswick Police Department Detective Michael Sapp provided the factual basis for the plea, Lewis admitted to the truth of Sapp's testimony, Judge Wood accepted Lewis' plea, and Judge Wood directed the United States Probation Office to prepare a pre-sentence investigation report ("PSR").  Id. at 25–29.  Judge Wood then sentenced Lewis to 165 months' imprisonment.  Crim. Case, Doc. 796.

Lewis has now filed a § 2255 Motion to challenge her sentence and conviction.  Doc. 1. The Government filed a Response.  Doc. 5.  Lewis also filed a Motion to Supplement and a Motion for Relief from Judgment, to which the Government responded.  Docs. 9, 10, 11, 14, 16. The Court addresses the parties' assertions.

## DISCUSSION

### I.    Whether Counsel Rendered Ineffective Assistance

Lewis raises claims of ineffective assistance of counsel during the criminal proceedings against her.  Criminal defendants have a right to effective assistance of counsel at all critical stages of the proceedings.  Strickland v. Washington, 466 U.S. 668 (1984).  This right extends to the right to proceed to trial, see Carver v. United States, 722 F. App'x 906 (11th Cir. 2018), and during sentencing proceedings, Glover v. United States, 531 U.S. 198, 202 (2001).  This right also extends to the entry of a guilty plea, Hill v. Lockhart, 474 U.S. 52, 58 (1985).

To prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate (1) her counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness, and (2) she suffered prejudice as a result of that deficient performance.  Id. at 685–86.  The deficient performance requirement concerns "whether

3

counsel's advice was within the range of competence demanded of attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985). There is a strong presumption counsel's conduct fell within the range of reasonable professional assistance. Davis v. United States, 404 F. App'x 336, 337 (11th Cir. 2010) (citing Strickland, 466 U.S. at 686). "It is petitioner's burden to 'establish that counsel preformed outside the wide range of reasonable professional assistance' by making 'errors so serious that [counsel] failed to function as the kind of counsel guaranteed by the Sixth Amendment.'" LeCroy v. United States, 739 F.3d 1297, 1312 (11th Cir. 2014) (quoting Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (alteration in original)). "Showing prejudice requires petitioner to establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. (internal citation omitted). "The prejudice prong requires a petitioner to demonstrate that seriously deficient performance of his attorney prejudiced the defense." Id. at 1312–13. "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011). "In evaluating performance, 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" LeCroy, 739 F.3d at 1312 (quoting Strickland, 466 U.S. at 690). "If a petitioner cannot satisfy one prong, [a court] need not review the other prong." Duhart v. United States, 556 F. App'x 897, 898 (11th Cir. 2014). "The burden of persuasion is on a section 2255 petitioner to prove, by a preponderance of the competent evidence, both that counsel's performance was unreasonable, and that she was prejudiced by that performance." Demar v. United States, 228 F. App'x 940, 950 (11th Cir. 2007).

"[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of

counsel's conduct."  Strickland, 466 U.S. at 690.  "The cases in which habeas petitioners can

properly prevail on the ground of ineffective assistance of counsel are few and far between."

James v. Sec'y, Dep't of Corr., No. 8:12-CV-1363, 2013 WL 5596800, at *3 (M.D. Fla. Oct. 11,

2013) (citing Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995)); Body v. United States,

Crim. Action No. 10-0232, 2013 WL 2470660, at *20 (S.D. Ala. June 6, 2013) (citing Johnson v.

Alabama, 256 F.3d 1156, 1176 (11th Cir. 2001)).

Even if counsel made an error so egregious as to be outside the broad scope of

competence expected of attorneys, a movant can obtain relief only if the error caused actual

prejudice.  Strickland, 466 U.S. at 691–92.  In order to establish actual prejudice, a petitioner

must show "there is a reasonable probability that but for the attorney's unprofessional errors, the

result of the proceeding would have been different."  Armstead v. Scott, 37 F.3d 202, 207 (5th

Cir. 1994).  A reasonable probability is a probability sufficient to undermine confidence in the

outcome of the proceedings.  Strickland, 466 U .S. at 694.  "The likelihood of a different result

must be substantial, not just conceivable."  Harrington v. Richter, 562 U.S. 86, 112 (2011).

A.      **Pre-Trial/Motion to Dismiss**

Lewis contends Mr. Clark was ineffective by failing to file a motion to dismiss the

indictment.  Doc. 1 at 4.  In response, the Government states there was no error in failing to file a

motion to dismiss the indictment, and Lewis cannot show prejudice.  Doc. 5 at 19.

After pleading guilty, a defendant can only attack her resulting conviction in "strictly

limited" circumstances.  Bousley v. United States, 523 U.S. 614, 621 (1998).  A § 2255

challenge to a conviction by guilty plea is "ordinarily confined to whether the underlying plea

was both counseled and voluntary.  If the answer is in the affirmative, then the conviction and

the plea, as a general rule, foreclose the collateral attack."  United States v. Broce, 488 U.S. 563,

569 (1989) (finding constitutional defendant could not raise double jeopardy claim on collateral attack following guilty plea).  Pertinently, a "knowing and voluntary guilty plea waives all non-jurisdictional, pre-plea defects, including ineffective assistance of counsel with respect to issues not implicating the voluntariness of the plea." Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992).

As discussed below, Lewis' contention Mr. Clark was ineffective for failing to file a motion to dismiss the indictment is precluded by Lewis' knowing and voluntary plea agreement.  Lewis does not claim Mr. Clark's failure to file a motion to dismiss the indictment affected the voluntariness of her plea.  See Menchaca v. Davis, Civil No. SA-18-CA-01272, 2019 WL 4702633, at *4 (W.D. Tex. Sept. 25, 2019) (noting allegation of ineffective assistance of counsel for failure to file a motion to suppress before plea agreement reached did not relate in any way to voluntariness of plea).  In addition, Lewis does not set forth any basis for a motion to dismiss Mr. Clark could have advanced.  United States v. James, CR416-085, CV419-026, 2019 WL 1212949, at *2 (S.D. Ga. Feb. 7, 2019) ("[C]onclusory claims—unsupported by any facts or argument of any kind—do not entitle a movant to § 2255 relief.") (alteration in original) (citing cases).  Thus, this enumeration of error provides no relief, and the Court should **DENY** this portion of Lewis' Motion.

B.     **During Plea Negotiations**

Lewis avers Mr. Clark coerced her into entering a plea agreement which included the other, dismissed charges.  Doc. 1 at 4.  In addition, Lewis contends she did not understand the nature of the charges or the consequences of her plea.  Id. at 5, 12.  Lewis asserts "court officials" overtook her will by "inducement, deception, and trickery just to obtain an unjust conviction."  Id. at 13.

The Government alleges Lewis' claims of ineffective assistance during the plea process are not supported by the record or meritorious. Doc. 5 at 21. The Government states Lewis was apprised of the nature of the charges and the consequences of her plea, including the appeal and collateral attack waivers, and she entered into her plea freely and voluntarily. Id. at 20. The Government also states Lewis now attempts to "flippantly and criminally" claim otherwise. Id. In addition, the Government states Lewis' guilty plea was knowing and voluntary. Id. at 22–26.

When a defendant enters a guilty plea pursuant to Rule 11 proceedings, "there is a strong presumption that the statements made during the colloquy are true" and her plea is knowing and voluntary. United States v. Gonzalez-Mercado, 808 F.2d 796, 800 n.8 (11th Cir. 1987). "However, a defendant's guilty plea is not knowing and voluntary if [s]he pled guilty on the advice of counsel and that counsel rendered ineffective assistance because his advice was outside of the range of competence demanded of attorneys in criminal cases." United States v. Munguia-Ramirez, 267 F. App'x 894, 897 (11th Cir. 2008) (internal citation omitted). The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary[,] intelligent choice among the alternative courses open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970); Boykin v. Alabama, 395 U.S. 238, 242 (1969). To determine whether a guilty plea was made knowingly and voluntarily, a court must specifically "address . . . three 'core principles,' ensuring that a defendant (1) enters [her] guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of [her] plea." United States v. Lambert, 777 F. App'x 336, 339 (11th Cir. 2019) (quoting United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005)). The assistance of counsel received by a defendant is relevant to the question of whether a defendant's guilty plea was knowing and intelligent insofar as it affects the defendant's knowledge and understanding. Cannon v. Jones,

Case No. 3:15CV213, 2017 WL 990583, at *6 (N.D. Fla. Feb. 7, 2017), *report and recommendation adopted*, 2017 WL 988663 (N.D. Fla. Mar. 13, 2017) (citing <u>McMann v. Richardson</u>, 397 U.S. 759, 770–71 (1970)).

In addition, a defendant must live with what she has told a court under oath. A defendant's sworn testimony to the trial judge in open court is presumed to be truthful. In the context of a plea hearing, the United States Supreme Court has stated, "[T]he representations of the defendant . . . at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." <u>Blackledge v. Allison</u>, 431 U.S. 63, 73–74 (1977). The defendant's representations are presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise. <u>Id.</u>

When "a defendant alleges [her] counsel's deficient performance led [her] to accept a guilty plea rather than go to trial, we do not ask whether, had [s]he gone to trial, the result of that trial 'would have been different' than the result of the plea bargain." <u>Lee v. United States</u>, ___ U.S. ___, 137 S. Ct. 1958, 1965 (2017). "Instead, when a defendant claims that [her] counsel's deficient performance deprived [her] of a trial by causing [her] to accept a plea, the defendant can show prejudice by demonstrating a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial." <u>Spriggs v. United States</u>, 703 F. App'x 888, 890 (11th Cir. 2017) (internal citation and punctuation omitted). A movant "alleging prejudice with respect to the plea process must demonstrate a reasonable probability that [s]he would have gone to trial rather than enter the plea, but for counsel's errors." <u>Martinez v. Sec'y, Fla. Dep't of Corr.</u>, 684 F. App'x 915, 922 (11th Cir. 2017) (citing <u>Lafler v. Cooper</u>, 566 U.S. 156, 163 (2012)). "Further, the decision to reject the plea must have

8

been 'rational under the circumstances.'" Id. (quoting Padilla v. Kentucky, 559 U.S. 356, 372 (2010)). In a plea situation, the focus of inquiry under the performance prong of Strickland is "whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" Hill, 474 U.S. at 56–57 (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Cannon, 2017 WL 990583, at *10 (citing Strickland, 466 U.S. at 689).

Lewis and Mr. Clark were able to negotiate a plea agreement with the Government whereby Lewis agreed to plead guilty to the conspiracy to possess with intent to distribute controlled substances, including 500 grams or more of cocaine and 280 grams or more of cocaine base (crack), charge (count 1). Crim. Case, Doc. 580. In exchange, the Government agreed to: not object to a recommendation Lewis receive a three-level reduction for acceptance of responsibility, if made; not file a 21 U.S.C. § 851 enhancement, if applicable; move the Court to dismiss the remaining counts against Lewis; recommend a sentence of no more than 25 years, if Lewis complied with the terms of the plea agreement; and file a § 5K1.1 or Rule 35 motion for sentence reduction, if applicable. Id. at 2–3. The plea agreement set forth the statutory elements and factual bases of the offense to which Lewis was pleading guilty. Id. at 4–5. Lewis agreed she was guilty of the offense. Id. at 5. In addition, Lewis affirmed she had read and reviewed the agreement with her attorney, understood the provisions of the agreement, voluntarily agreed to it, and stipulated to the factual basis as being true and accurate. Id. at 14.

Lewis appeared before Judge Wood for her Rule 11 proceeding. Judge Wood addressed Lewis and informed her the purpose of the hearing was to ensure she understood the case that

was pending against her, she understood all of the rights she was waiving or giving up by pleading guilty, there was a factual basis for the guilty plea, and, after consultation with Mr. Clark, pleading guilty was what Lewis wanted to do.  Crim. Case, Doc. 829 at 2–3.  Judge Wood inquired whether anyone had made, leaned on, or pushed Lewis to offer to plead guilty, and she said no one had done so and pleading guilty was what she wanted to do.  Id. at 3.  When Judge Wood asked Lewis how far she had gone in school, Lewis informed her she stopped because of a learning disability.  Id. at 5.  Judge Wood inquired whether Mr. Clark and Lewis went through the documents involved in the case, including the indictment and plea agreement, and Lewis said Mr. Clark read those to her and knew what these documents contained.  Id.  And when Lewis informed Judge Wood she had been diagnosed with bipolar disorder and schizophrenia and had been on medications, Judge Wood asked Lewis if she were hearing voices; Lewis responded in the affirmative and stated she was scared to ask for medications at the jail.  Id. at 7–8.  Judge Wood stopped the Rule 11 hearing and stated she would order Lewis be sent to a federal facility for a psychological evaluation.  Id. at 9.  After receipt of the psychological report, the Court determined Lewis was competent.  Crim. Case, Docs. 518, 532, 560.

Judge Wood then conducted another Rule 11 hearing.  Crim. Case, Docs. 578, 830.  Judge Wood began by recapping what occurred during the original Rule 11 hearing and the results of the psychological evaluation.  Crim. Case, Doc. 830 at 2–3.  Judge Wood asked if anyone was making, pushing, or leaning on Lewis to offer to plead guilty, and Lewis said no and pleading guilty was what she wanted to do.  Id. at 5.  After Lewis was sworn in, Judge Wood told Lewis she did not have to plead guilty.  Id. at 9.  Judge Wood also told Lewis if she chose to persist in her not guilty plea, she would have the right to: a public and speedy trial by jury; a presumption of innocence that would follow throughout that trial; the assistance of trial counsel;

see, hear, confront, and cross-examine the Government's witnesses and evidence; call witnesses on her behalf; and testify herself or remain silent.  Id.  However, Judge Wood cautioned Lewis she would be waiving these rights if she pleaded guilty and Judge Wood accepted that guilty plea.  Id.  Lewis stated she understood.  Id. at 10.  Lewis also stated she and Mr. Clark had had the opportunity to talk about the facts and the law pertaining to her case, including the indictment, as well as about the proposed plea agreement.  Id.  Lewis stated Mr. Clark had spoken with her in general terms about the Sentencing Guidelines and affirmed she was satisfied with Mr. Clark's representation and had no complaints whatsoever.  Id.

Judge Wood reviewed the indictment with Lewis, the essential elements of the crime to which she was pleading guilty and the other counts of the indictment naming her, and that the Government would have to prove those essential elements.  Id. at 11–12, 13–14.  Judge Wood asked Lewis if she was familiar with what was set forth in the indictment, and she responded "yes."  Id. at12.  Judge Wood advised Lewis that to convict her of count 1 of the indictment, the Government would have to prove beyond a reasonable doubt the three essential elements of the conspiracy: (1) two or more people agreed in some way to "accomplish a shared and unlawful plan to possess 500 grams or more of cocaine and 280 grams or more of cocaine base," both of which are Schedule II controlled substances; (2) Lewis knew the unlawful purpose of the plan and willfully joined it; and (3) the object of the unlawful plan was to possess with intent to distribute 500 grams or more of cocaine and 280 grams of cocaine base (crack).  Id. at 14.  By pleading guilty, Judge Wood noted Lewis was admitting the essential elements of the crime to which she intended to plead guilty were satisfied.  Id.  Judge Wood advised Lewis of the maximum sentence the Court could impose, which was not less than 10 years nor more than life in prison and emphasized she must sentence Lewis to at least 10 years in prison if she accepted

the guilty plea.  Id. at 14–15.  Moreover, Judge Wood explained to Lewis that, in imposing a

sentence upon her, she would have to take into consideration the advisory Sentencing Guidelines

and the factors set forth in 18 U.S.C. § 3553.  Id. at 15.  Judge Wood also stated she would

consider some "major factors," including Lewis' criminal history or lack thereof, her role in the

offense, and whether she told the truth and accepted responsibility.  Id. at 16.  Lewis stated she

understood and had no questions.  Id.  Judge Wood inquired whether anyone had promised

Lewis an exact sentence, and Lewis stated no one had.  Id.  Lewis verified Mr. Clark had her

permission to negotiate with the United States to reach a plea agreement.  Id. at 17.

Judge Wood asked the Assistant United States Attorney ("AUSA") to summarize the

provisions of the plea agreement.  AUSA Greg Gilluly stated the material provisions were:

> The Government agrees to not object to a recommendation from the probation
> office that the Defendant receive a full three-level reduction for acceptance of
> responsibility if the recommendation is made.

> The Government agrees to not file a 21 USC Section 851 enhancement as to this
> Defendant.  The Government will move to dismiss this Defendant from the
> remaining counts of the indictment at sentencing and will file a 5K1.1 or Rule 35
> motion for sentencing reduction[,] if applicable[,] as outlined in the plea
> agreement.

> The Defendant agrees to plead guilty to Count 1 of the indictment and agrees to
> admit to the truth of the factual basis contained in the plea agreement, agrees to
> cooperate in all state and federal proceedings outlined in the plea agreement, and
> agrees to waive all rights to request information about the investigation and
> prosecution of her case under the Freedom of Information Act and the Privacy
> Act.

> She waives the protections of Rule 11(f) of the Federal Rules of Criminal
> Procedure and Rule 410 of the Federal Rules of Evidence.  If she fails to plead
> guilty o[r] later withdraws her guilty plea, all statements made by her in
> connection with the plea and any leads derived therefrom shall be admissible for
> any and all purposes.  She agrees to pay a special assessment on the date imposed
> by [t]he Court and agrees to the forfeiture as outlined in the indictment.

> She agrees to waive her right to appeal on any ground with limited exceptions outlined in the plea and agrees to waive her right to collaterally attack on any ground except as outlined in the plea agreement . . . .
>
> [T]he Government will recommend a sentence not greater than 25 years of imprisonment . . . .

Id. at 17–18.  Judge Wood asked Lewis if AUSA Gilluly's summarization of the plea agreement was consistent with the plea agreement she signed, and she stated it was.  Id. at 21.  Lewis also stated she read the plea agreement or had Mr. Clark's assistance in reading it before she signed it and Mr. Clark answered any questions she may have had.  Id.  Lewis affirmed no one had made her any promises regarding the outcome of her case, other than the provisions contained in the plea agreement.  Id.  Judge Wood also discussed the appeal waivers contained in the plea agreement, including the limited exceptions if: she were to sentence Lewis above the statutory maximum; she were to sentence Lewis above the advisory Guidelines range, as found by her; and the Government were to file a direct appeal.  Id. at 22.

Judge Wood then asked Lewis whether she wished to still plead guilty to count 1 of the indictment because she was in fact guilty of that count, and she answered in the affirmative.  Id. at 23.  Judge Wood also asked Lewis whether she understood the rights and privileges she was waiving if she accepted her plea, and Lewis said she did.  Id.  Judge Wood determined Lewis' offer to plead guilty was "knowing" and "voluntary."  Id. at 24.  Lewis agreed.  Id.

The Government provided a factual basis for Lewis' plea of guilty by calling Brunswick Police Department Detective Michael Sapp to testify.  Id.  Detective Sapp testified he was one of the lead investigators of the investigation into Lewis and the other people outlined in the indictment, which the Federal Bureau of Investigation ("FBI") and the Coastal Georgia Violent Gang Task Force primarily investigated.  Id. at 25.  Detective Sapp stated the FBI focused its attention on the Bloods gang, using confidential informants and wiretaps, including court-

authorized wiretaps on Lewis' and her husband's telephones and her son's telephone, among other investigative techniques.  Id. at 26.  Through this wiretap, officers were able to confirm Calvin Lewis, Lewis' husband and one of her co-defendants, was the local leader of the Bloods gang.  Id.  Additionally, officers were able to learn Lewis possessed drugs with intent to distribute and was involved in a conspiracy to distribute cocaine and cocaine base with her husband, son, and others.  Id. at 26–27.  Officers also learned the organization, which operated from 2013 until April 2016, possessed weapons and committed other crimes to further the goals of the conspiracy.  Id. at 27.  Detective Sapp testified this conspiracy was responsible for the distribution of at least 500 grams of powder cocaine and 280 grams of cocaine base.  Id.  Once officers had a "takedown," Detective Sapp interviewed Lewis, who admitted to having helped her husband by selling, transporting, and storing drugs.  Id. at 28.  Further, Lewis' husband and other co-conspirators implicated Lewis' involvement in the conspiracy.  Id.  Lewis admitted to the truth of Detective Sapp's testimony.  Id. at 29.  Judge Wood was "satisfied" there was a factual basis for a plea, accepted Lewis' plea, and adjudged her guilty of count 1 of the indictment.  Id.  Judge Wood advised Lewis a probation officer would prepare a PSR, and the Court would schedule a sentencing hearing after the PSR was disclosed to the Government and to Mr. Clark.  Id.

To be clear, Judge Wood informed Lewis at the outset of the initial Rule 11 hearing the purpose of the hearing was for her to understand the case pending against her, the rights she was waiving by pleading guilty, the factual basis for her plea, and whether pleading guilty was what Lewis wanted to do after consultation with her attorney.  Crim. Case, Doc. 829 at 2–3.  Judge Wood summarized this purpose upon the resumption of the Rule 11 proceedings.  Crim. Case, Doc. 830 at 3–4.  After telling Lewis she would be asked to swear under penalty of perjury to tell

14

the truth at her Rule 11 hearing or the Government could prosecute her for perjury, Lewis averred no one was forcing her to plead guilty and that pleading guilty was what she wanted to do.  Id. at 4–5.  Judge Wood discussed the specific rights Lewis was afforded if she chose to persist with a not guilty plea, and Judge Wood advised Lewis she would waive those rights if she pleaded guilty and Judge Wood accepted her plea.  Id. at 9–10.  Lewis stated she had spoken with Mr. Clark about the facts and law of her case, including the plea agreement, indictment, and the Sentencing Guidelines in general terms.  Id. at 10.  Lewis verified AUSA Gilluly's summary of the plea agreement was consistent with the plea she had signed.  Id. at 21.  Judge Wood asked Lewis whether she wanted to plead guilty because she was, in fact, guilty of count 1 of the indictment, and she answered in the affirmative.  Lewis declared she understood the rights and privileges she was waiving by pleading guilty and proceeded to do so.  Judge Wood determined Lewis' guilty plea was knowing and voluntary.  Id. at 24.  Detective Sapp then provided a factual basis for Lewis' plea, and Lewis agreed with the Government's factual basis.  Id. at 29.  Judge Wood accepted Lewis' plea and adjudged her guilty of conspiracy of possession with intent to distribute cocaine and cocaine base.  Id.  In so doing, Judge Wood addressed the "three core principles" required during a Rule 11 hearing.  Lambert, 777 F. App'x at 339.

Lewis' seeming assertion Mr. Clark was ineffective during the plea phase and, had it not been for Mr. Clark's ineffective assistance, she would not have pleaded guilty, is belied by the record before the Court and is without merit.  If Lewis had not entered a plea agreement, proceeded to trial on all counts of the indictment against her, and been convicted of those counts, she would have faced a sentence of up to life in prison.[2]  Crim. Case, Doc. 4.  Because Lewis

---

[2]     The Court recognizes the applicable standard is not whether the result of a trial would have been different than entering a plea.  Lee v. United States, ___ U.S. ___, 137 S. Ct. 1958, 1965 (2017).  The Court notes this merely as illustrative of the reasonableness of Lewis' acceptance of a plea agreement.

pleaded guilty, her sentencing range was 168 to 210 months' imprisonment, or a sentencing

range of far less than she would have faced by statute had she not pleaded guilty and received a

three-point level reduction for acceptance of responsibility.  What is more, the record before the

Court, including the statements Lewis rendered under oath and under penalty of perjury, belies

Lewis' contentions in her Motion as to Mr. Clark's assistance during the plea process and

whether her plea was entered into knowingly and voluntarily.  Further, Lewis has not shown not

accepting the plea would have been rational under the circumstances, Martinez, 684 F. App'x at

922, and instead offers conclusory allegations in this regard.  Lewis is not entitled to her

requested relief, and the Court should **DENY** this portion of her Motion.

      **C.**    **During Sentencing**

      Lewis avers Mr. Clark rendered ineffective assistance during the sentencing phase of her

criminal proceedings because Mr. Clark did not advise her regarding relevant conduct and she

would be held responsible for uncharged drug quantities, possessing dangerous weapons for

credible threats to use violence, and a leadership role in the conspiracy.  Doc. 1 at 4; Doc. 10 at

6–7.  Lewis asserts the Court relied on testimony and evidence from cooperating co-defendants

in determining her total offense level under the Guidelines.  Doc. 10 at 6.

      "Relevant conduct under the guidelines need not be charged to be considered in

sentencing, and it includes all acts and omissions that were part of the same course of conduct or

common scheme or plan as the offense of conviction."  United States v. Jokhoo, 806 F.3d 1137,

1141 (8th Cir. 2015) (quoting United States v. Radtke, 415 F.3d 826, 841 (8th Cir. 2005)).  A

court considering relevant conduct "must consider 'all acts and omissions committed, aided,

abetted, counseled, commanded, induced, procured, or willfully cause by the defendant.'"

United States v. Tillman, 2:17-CR-8, 2017 WL 2728209, at *3 (S.D. Ga. June 23, 2017) (quoting

U.S.S.G. § 1B1.3(a)(1)(A)).  In addition, the base offense level "shall be determined on the basis of . . . all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction[.]"  Id. (quoting U.S.S.G. § 1B1.3(a)(2)).  "Courts have consistently held . . . conduct forming the basis of counts . . . dismissed from the indictment pursuant to a plea agreement[] is relevant conduct for sentencing."  McReed v. United States, Nos. CV113-121, CR 111-302, 2014 WL 1238037, at *8, n.4 (S.D. Ga. Mar. 21, 2014) (citing United States v. Watts, 519 U.S. 148, 149–53 (1997) (holding sentencing court may consider facts relating to other charges, even ones of which defendant has been acquitted); United States v. Kennedy, 326 F. App'x 509, 511 (11th Cir. 2009) (relevant conduct for sentencing included quantities of drugs that were subject of dismissed counts of indictment); United States v. Karam, 37 F.3d 1280, 1285 (8th Cir. 1994) ("[A] sentencing court may consider, as relevant conduct under U.S.S.G. § 1B1.3, the conduct charged in dismissed counts.")).

Under the Guidelines, the Court was to consider all of Lewis' relevant conduct, even the dismissed counts of conspiracy to use, carry, and brandish firearms and possession of cocaine base with intent to distribute.  In addition, the plea agreement Lewis and the Government reached informed her the Guidelines' calculation would take into account all of her relevant conduct, not just the facts underlying the counts to which she was pleading guilty.  Crim. Case, Doc. 580 at 7.  What is more, Lewis stated at the Rule 11 hearing she understood the Court could impose a sentence upon her up to the statutory maximum, which was life imprisonment.  Crim. Case, Doc. 830 at 14.  Thus, the Court correctly included the dismissed counts in assessing a proper sentence for Lewis.  Her contention to the contrary—couched as an ineffective assistance of counsel claim—is without merit, as Lewis cannot meet either prong of the Strickland standard. The Court should **DENY** this portion of Lewis' Motion.

**D.      Appeal**

Lewis contends Mr. Clark failed to file a notice of appeal on her behalf, even after she requested he do so.  Doc. 1 at 4, 10.  Lewis also notes Mr. Clark did not assist her during the appeals process.  Id. at 14.

In response, the Government notes Lewis freely and voluntarily waived her right to appeal, as noted in the plea agreement and at the Rule 11 and sentencing hearings.  Doc. 5 at 18.  The Government states Lewis explicitly and irrevocably instructed Mr. Clark not to file an appeal.  In addition, the Government asserts there is nothing in the record demonstrating Lewis requested an appeal, nor did she let the Court know she wished to appeal.  Id.  Further, the Government states Lewis signed the post-conviction certification indicating she did not wish to file an appeal.  Nevertheless, Lewis filed a pro se letter requesting to appeal her conviction and sentence and later filed a pro se request to withdraw her appeal; Mr. Clark filed a consent motion to dismiss the appeal with the Eleventh Circuit Court of Appeals.  Id. at 18–19; Doc. 5-1.

It is well-settled waiver of appeal provisions in plea agreements are enforceable if the waivers are knowing and voluntary.[3]  United States v. Johnson, 541 F.3d 1064, 1066 (11th Cir. 2008) (citing United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001)); Williams v. United States, 396 F.3d 1340, 1341 (11th Cir. 2005).  To establish the waiver was made knowingly and voluntarily, the government must show either (1) "the district court specifically questioned the defendant" about the waiver during the plea colloquy, or (2) the record makes clear that "the defendant otherwise understood the full significance of the waiver."  United States v. Salgado, 799 F. App'x 806, 807 (11th Cir. 2020); Johnson, 541 F.3d at 1066; see also Medina

---

[3]      Here, "appeal" refers to the right to appeal or contest, directly or collaterally, a sentence.  United States v. Bushert, 997 F.2d 1343, 1350 & n.17 (11th Cir. 1993).  Case law concerning waiver of a direct appeal has also been applied to waiver of the right to collateral proceedings.  Vaca-Ortiz v. United States, 320 F. Supp. 2d 1362, 1365–67 (N.D. Ga. 2004).

v. United States, 597 F. App'x 583, 586 (11th Cir. 2015) (same).  The district court must clearly

convey to the defendant the circumstances under which she is giving up the right to appeal.

Salgado, 799 F. App'x at 807 (internal citation omitted).  "An appeal waiver includes the waiver

of the right to appeal difficult or debatable legal issues or even blatant error."  United States v.

Grinard-Henry, 399 F.3d 1294, 1296 (11th Cir. 2005).  "Waiver would be nearly meaningless if

it included only those appeals that border on the frivolous."  Brown v. United States, 256

F. App'x 258, 261–62 (11th Cir. 2007).

However, the Eleventh Circuit has "noted that '[i]n extreme circumstances—for instance,

if the district court had sentenced [the defendant] to a public flogging—due process may require

that an appeal be heard despite a previous waiver.'"  Salgado, 799 F. App'x at 807 (quoting

United States v. Howle, 166 F.3d 1166, 1169 n.5 (11th Cir. 1999)).  Nonetheless, the Eleventh

Circuit has "'consistently enforced knowing and voluntary appeal waivers according to their

terms.'"  Id. (quoting United States v. Bascomb, 451 F.3d 1292, 1294 (11th Cir. 2006)).  A court

is to "apply 'a strong presumption that [a defendant's] statements made during the [plea]

colloquy are true.'"  Id. (quoting United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994)).

The pertinent provision of Lewis' plea agreement states:

> Defendant entirely waives her right to a direct appeal of her conviction and
> sentence on any ground.  The only exceptions are that the Defendant may file a
> direct appeal of her sentence if (1) the court enters a sentence above the statutory
> maximum; (2) the court enters a sentence above the advisory Sentencing
> Guidelines range found to apply by the court at sentencing; or (3) the Government
> appeals the sentence.  Absent those exceptions, Defendant explicitly and
> irrevocably instructs her attorney not to file an appeal.

Crim. Case, Doc. 580 at 9.  The record clearly indicates Lewis understood the implications of

entering a guilty plea.  As part of the colloquy Judge Wood had with Lewis during her second

Rule 11 hearing, Judge Wood and Lewis had the following exchange, after Lewis was under

oath:

> THE COURT:  I want to follow up on one of those provisions [contained in this plea agreement], and that is the appeal waivers that are contained in that agreement.  As a part of this agreement that you're proposing, you agree to waive your right to appeal directly your conviction and sentence on any ground.
>
> There are three exceptions to that waiver, though.  Number 1, if I sentence you above the statutory maximum, you can appeal that directly.  Number 2, if I sentence you above the advisory guideline range as found by me, you can appeal that directly, or, Number 3, if the Government were to file a direct appeal, then you, too, could file one, but otherwise, by virtue of the plea agreement, you waive all other direct appellate rights; understand?
>
> THE DEFENDANT: Yes, ma'am.

Crim. Case, Doc. 830 at 21–22.  Judge Wood reminded Lewis of her appeal waiver and the three

exceptions to that waiver during sentencing proceedings.  Crim. Case, Doc. 831 at 14–15.

As noted above, when a defendant enters a guilty plea pursuant to Rule 11 proceedings,

"there is a strong presumption that the statements made during the colloquy are true" and her

plea is knowing and voluntary.  Gonzalez-Mercado, 808 F.2d at 800 n.8.  Lewis' Rule 11

colloquy with the Court, as well as her plea agreement, make clear Lewis understood the full

significance of the appeal waiver.  As Lewis stated during her Rule 11 colloquy, Mr. Clark

reviewed the plea agreement with Lewis in detail.  Thus, the collateral attack waiver is

enforceable.  See Williams, 396 F.3d at 1342 & n.2; see also United States v. White, 307 F.3d

336, 343 (5th Cir. 2002).

Lewis was not sentenced to a term of imprisonment higher than the advisory Guidelines'

range Judge Wood found to be appropriate, nor was she sentenced above the statutory maximum

sentence.  Lewis' sentence of 165 months' imprisonment fell below the 168- to 210-month

Guidelines range, as found by Judge Wood, and below the statutory maximum sentence of life

imprisonment Lewis could have faced.  <u>See</u> 21 U.S.C. § 841(b).  And the Government did not

file an appeal.  Thus, Lewis' claim regarding Mr. Clark's alleged ineffective assistance by not

filing an appeal falls squarely within the appeal waiver.

The Court turns to whether Lewis sets forth a valid ineffective assistance of counsel

claim against Mr. Clark for failing to file a notice of appeal on her behalf at Lewis' directive.

"Because the [movant] must prove both deficiency and prejudice, a [movant's] failure to prove

either will be fatal to [her] claim."  <u>Johnson v. Scott</u>, 68 F.3d 106, 109 (5th Cir. 1995).  Under

the <u>Strickland</u> test, the movant must initially show counsel's representation fell below an

"objective standard of reasonableness."  <u>Strickland</u>, 466 U.S. at 688. "While it need not be

errorless, counsel's advice 'must be within the realm of competence demanded of attorneys

representing criminal defendants.'"  <u>Jones v. White</u>, 992 F.2d 1548, 1557 (11th Cir. 1993)

(quoting <u>Stano v. Dugger</u>, 921 F.2d 1125, 1151 (11th Cir 1991)).  In making such an evaluation,

"the court should recognize that counsel is strongly presumed to have rendered adequate

assistance and made all significant decisions in the exercise of reasonable professional

judgment." <u>Strickland</u>, 466 U.S. at 690.  The effectiveness or ineffectiveness of counsel must be

evaluated by consideration of the totality of the circumstances.  <u>Stanley v. Zant</u>, 697 F.2d 955,

962 (11th Cir. 1983).

Even if counsel made an error so egregious as to be outside the broad scope of

competence expected of attorneys, a movant can obtain relief only if the error caused actual

prejudice.  <u>Strickland</u>, 466 U.S. at 691–92.  In order to establish actual prejudice, a petitioner

must show that "there is a reasonable probability that but for the attorney's unprofessional errors,

the result of the proceeding would have been different." <u>Armstead v. Scott</u>, 37 F.3d 202, 207

(5th Cir. 1994).  A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings.  Strickland, 466 U .S. at 694.

"Counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal . . . or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing."  Roe v. Flores-Ortega, 528 U.S. 470, 480 (2000).  "Even assuming that a rational defendant would not have wanted to appeal the case, [where a defendant] expressly communicated to [her] attorney [her] desire to appeal . . .[,] Flores-Ortega mandates that the attorney conduct a specific type of consultation, informing his client about the advantages and disadvantages of appealing and making a reasonable effort to determine the client's wishes."  Gomez-Diaz v. United States, 433 F.3d 788, 792 (11th Cir. 2005).

It is well-settled an attorney's failure to file a requested notice of appeal is *per se* ineffective assistance of counsel.  Flores-Ortega, 528 U.S. at 470, 483–86; Gaston, 237 F. App'x at 495.  A defendant claiming ineffective assistance on that score need not demonstrate an ability to raise meritorious issues on appeal.  Flores-Ortega, 528 U.S. at 477–78.  Instead, she can prove ineffective assistance by showing a "reasonable probability" she would have timely appealed had counsel not failed to file an appeal on her behalf.  Id. at 484.  Further, even where a defendant has signed a waiver of direct appeal as part of her plea agreement (as Lewis did in this case), she has no burden to show the issue she would have raised on appeal falls outside of that waiver.  Gaston, 237 F. App'x at 497; Gomez-Diaz, 433 F.3d at 793.

Lewis claims she told Mr. Clark she wished to file an appeal.  Doc. 1 at 4.  The post-conviction consultation certificate, which Lewis signed on July 27, 2017, reflects Lewis advised Mr. Clark she did not want to file an appeal.  Crim. Case, Doc. 794.  Through this notice, Mr.

22

Clark certified—and Lewis agreed—that Mr. Clark met with Lewis, explained to Lewis the appellate process and her rights to appeal her conviction and sentence, advised Lewis of the advantages and disadvantages of filing an appeal, and thoroughly inquired of her about her interest in appealing.  Id.  After this consultation, Lewis certified her agreement with these statements by printing and signing her name.  Id.  Lewis has not denied any of the contents of this notice or otherwise contested the validity of this notice in any of her pleadings.  In addition, Lewis submitted a letter to this Court in which she stated she wished to appeal her conviction and sentence.  Crim. Case, Doc. 818.  A notice of appeal was filed with the Eleventh Circuit.  Crim. Case, Doc. 819.  A matter of days later, Lewis submitted a motion to voluntarily dismiss her appeal and apologized "for any inconvenience."  Crim. Case, Doc. 823; see also Doc. 5-1.

The notice shows Mr. Clark fully explained the appellate process to Lewis, apprised Lewis of the advantages and disadvantages of an appeal, fully informed her of the consequences of that decision (including in a § 2255 proceedings like this), and attempted diligently to ascertain her wishes.  It also shows Lewis expressly instructed Mr. Clark not to file an appeal.  Cf. Winthrop-Redin v. United States, 767 F.3d 1210, 1216 (11th Cir. 2014) ("[A] prisoner has everything to gain and nothing to lose from filing a collateral attack upon his guilty plea . . . . [Consequently,] the representations of the defendant . . . constitute a formidable barrier in any subsequent collateral proceedings." (quoting Blackledge v. Allison, 431 U.S. 63, 71–74 (1977))); Rosin v. United States, 786 F.3d 873, 878 (11th Cir. 2015) ("It is well-settled that the district court is not required to grant an evidentiary hearing when the defendant's claims are affirmatively contradicted by the record evidence, nor is a hearing required if the claims are grounded upon generalizations that are unsupported by the record evidence.").  In short, the undisputed post-conviction consultation certification establishes Lewis' informed decision not to

take an appeal and thwarts her claim counsel was ineffective for failing to file an appeal.

See Eubank v. United States, No. CR414-005, 2016 WL 750344, at *1 (S.D. Ga. Feb. 25, 2016), *report and recommendation adopted*, 2016 WL 1464578 (S.D. Ga. Apr. 13, 2016), *certificate of appealability denied*, No. 16-11933-F, 2016 WL 6246827 (11th Cir. Oct. 25, 2016) (Section 2255 motion denied where movant faulted her lawyer for failing to directly appeal but notice of post-conviction consultation certification memorialized her informed decision not to take an appeal); Eason v. United States, No. CR613-007, 2014 WL 4384652, at *3 (S.D. Ga. Sept. 3, 2014), *report and recommendation adopted*, 2014 WL 4956680 (S.D. Ga. Oct. 2, 2014) (same); see also Price v. United States, No. CR614-016, 2017 WL 525869, at *4 (S.D. Ga. Feb. 8, 2017), *report and recommendation adopted*, 2017 WL 1393058 (S.D. Ga. Apr. 11, 2017) (notice of post-conviction consultation certification and attorney's affidavit regarding same rebut § 2255 claim that counsel neglected to apprise movant of the advantages and disadvantages of filing direct appeal).

For all of these reasons, the Court should **DENY** Lewis' claim that Mr. Clark rendered ineffective assistance by failing to file an appeal on her behalf. Thus, the Court should **DENY** this portion of Lewis' Motion.

## II.    Whether the Court had Subject Matter Jurisdiction

Lewis contends the Court lacked subject matter jurisdiction over her criminal prosecution. "Article I, Section 8 of the Constitution empowers Congress to create, define, and punish crimes, irrespective of where they are committed." United States v. Morrison, Crim. Action File No. 1:18-cr-141, 2019 WL 2482170, at *1 (N.D. Ga. Mar. 11, 2019). Thus, Congress had constitutional authority in enacting §§ 841 and 846. Id. at *2 (citing Gonzales v. Raich, 545 U.S. 1, 9 (2005) (holding the Controlled Substances Act is a proper exercise of

Congress' authority to regulate interstate commerce); then citing <u>United States v. Wilson</u>, 238 F. App'x 571, 572–73 (11th Cir. 2007) (holding by enacting the Controlled Substances Act, Congress did not exceed its authority under the Commerce Clause)).  Additionally, federal district courts have exclusive jurisdiction over "all offenses against the laws of the United States."  18 U.S.C. § 3231.  Even in those situations "where state officials conducted most of an investigation, federal prosecutors possess[] full authority to bring a federal indictment so long as they alleged a violation of federal law."  <u>United States v. Singletary</u>, 345 F. App'x 466, 468 (11th Cir. 2009).

The indictment in this case alleged a number of violations of federal laws passed under Congress' constitutional authority.  Therefore, the federal government had authority to prosecute Lewis, and this Court had jurisdiction to hear the case.  Lewis' enumeration of error is without merit, and the Court should **DENY** this portion of Lewis' § 2255 Motion.

### III.   Whether 21 U.S.C. §§ 841(a)(1), (b)(1), and 846 Violate the Ex Post Facto Clause

Lewis contends 21 U.S.C. §§ 841(a)(1) and (b)(1) and 846 are ex post facto laws because these statutes "criminalize an action and simultaneously provide[] for punishment of those who took the action before it had legally become a crime."  Doc. 1 at 17.  Lewis also states these statutes are facially unconstitutional and as applied to her because there is no "enacting clause[,]" in violation of her right to due process.  <u>Id.</u>  The Government asserts the statutes of Lewis' conviction do not violate the ex post facto clause because the penalty under these statutes was the same on the date charged, the date of conviction, and the date of sentencing.  Doc. 5 at 27.

The United States Constitution provides that "[n]o . . . ex post facto Law shall be passed." U.S. Cont. art. I, § 9, cl. 3.  A law violates the ex post facto clause if it imposes punishment for an act that was not criminal at the time it was committed or if it imposes a punishment greater

25

than originally prescribed at the time the crime was committed.  United States v. Kiekow, 872

F.3d 236 (5th Cir. 2017).

Lewis was on notice at the time she committed the charged offenses that §§ 841(a)(1) and

(b)(1) and 846 were criminal statutes.  In addition, she was made aware of the statutory penalties

applicable to these statutes at the time she committed the charge to which she pled guilty—a

minimum of 10 years' and a maximum of life imprisonment.  Crim. Case, Docs. 4, 580, 821,

830, 831.  Lewis cannot now claim these statutes violate the ex post facto clause, and the Court

should **DENY** this portion of her § 2255 Motion.

### IV. Failure to File Recusal or Disqualification Affidavit[4]

Lewis contends Mr. Clark was aware she was a litigant in a civil action in this Court

concerning law enforcement officials' alleged Fourth Amendment violations, and Judges Wood

and Baker presided over this civil case.  Doc. 10 at 9.  Lewis asserts Judge Wood entered orders

and held hearings in this civil action.  Id.  The day after this civil action settled, a grand jury

convened and returned an indictment against her, her husband and other family, and others

charging conspiracy.  Id. at 10.  Lewis maintains Mr. Clark should have moved Judges Wood

and Baker for recusal because they were privy to the details of her civil action.  Id. at 11.  In

addition, Lewis states Judge Wood and Judge Baker knew Lewis' husband and son were also

indicted, which shows the Court was biased.  Id.

Recusal is governed by 28 U.S.C. §§ 144 and 455.  Jones v. Commonwealth Land Title

Ins. Co., 459 F. App'x 808, 810 (11th Cir. 2012).  Under § 144, a judge must recuse herself or

---

[4]      Lewis asserts Mr. Clark was ineffective for failing to file an affidavit detailing Judge Wood and
former Magistrate Judge Baker's bias or prejudice against her, doc. 10 at 7–12, likely in an attempt to
work around her collateral attack waiver contained in her plea agreement.  Crim. Case, Doc. 580.  The
Court addresses this assertion as a separate enumeration of error, but, even if the Court were to construe
this allegation as an ineffective assistance claim, Lewis fails to show prejudice and does not satisfy either
prong of Strickland.

himself when a party to a district court proceeding "files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party." 28 U.S.C. § 144. "To warrant recusal under § 144, the moving party must allege facts that would convince a reasonable person that bias actually exists." Christo v. Padgett, 223 F.3d 1324, 1333 (11th Cir. 2000). Under § 455(a), a judge must disqualify herself or himself if her or his "impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Section 455(a) requires recusal where "an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." Parker v. Connors Steel Co., 855 F.2d 1510, 1524 (11th Cir. 1988). Any doubts must be resolved in favor of recusal. United States v. Kelly, 888 F.2d 732, 744 (11th Cir. 1989).

Regarding recusal under § 144, Lewis does not provide an affidavit and fails to plausibly allege judicial bias against her; rather, Lewis' contentions are nothing more than baseless assertions that, because Judge Wood and Judge Baker presided over a civil action which is not related to Lewis' criminal proceedings, these judges improperly gained knowledge about Lewis' criminal prosecution. The proceedings in Civil Action 2:14-cv-122 arose as a result of Lewis' and Calvin Lewis' claims City of Brunswick Police officers illegally searched their residence without a warrant in 2012. Compl., Lewis v. City of Brunswick, 2:14-cv-122 (S.D. Ga. Aug. 15, 2014), ECF No. 1. Lewis has not shown any connection between this civil action and the criminal proceedings against her, other than she and her husband were the plaintiffs in the civil action and the residence involved in that civil case is one of the same residences involved in the criminal proceedings. Lewis fails to show Judge Wood or former Magistrate Judge Baker acted improperly in either case. See United States v. Grinnell Corp., 384 U.S. 563, 583 (1966) ("The

27

alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his [or her] participation in the case.").

Similarly, recusal under § 455 is not warranted.  Disqualification "may not be predicated on the judge's rulings in the instant case or in related cases."  <u>Deems v. Comm'r of IRS</u>, 426 F. App'x 839, 843 (11th Cir. 2011) (citing <u>Phillips v. Joint Legis. Comm. on Performance & Expenditure Review of the State of Miss.</u>, 637 F.2d 1014, 1020 (5th Cir. 1981)).

Because Lewis has not put forth any evidence raising reasonable doubts as to the assigned judges' impartiality, recusal is not warranted in this case.  Thus, the Court **DENIES** Lewis' claim.

## V.    Motion for Rule 60(d)(3) Relief, Doc. 14

Lewis moves to have the Court's judgment in her criminal proceedings set aside because the indictment "was obtaine[d] by fraud on the Court when the Prosecutor and Judges presented what they knew to be false material evidence to the Grand Jury Panel."  Doc. 14 at 2.  Lewis asserts Judge Wood presided over the civil action Lewis and her husband filed, entered orders, and learned details about the civil case before she sentenced her.  <u>Id.</u>  Lewis contends Judge Wood and former Magistrate Judge Baker did not recuse themselves in this criminal matter "after being fully aware of the retaliation against [her], and her husband that arose from them in the civil case that was granted in her favor."  <u>Id.</u>  Lewis states the grand jury which returned an indictment against her and her husband convened the day after the civil action settled.  <u>Id.</u>  Lewis contends the actions of Judges Wood and Baker violated judicial canons of conduct, and this Court should set aside her judgment of conviction.  <u>Id.</u> at 3–4.

The Government responds Lewis' Rule 60(d)(3) is premature, as there has been no final ruling in her § 2255 Motion.  Doc. 15 at 3.  In the alternative, the Government avers Lewis' Motion should be denied on the merits.  The Government alleges the standard for fraud on the court is demanding and must be established by clear and convincing evidence.  Id. at 3–4.  The Government also alleges Lewis does not set forth sufficient facts to support a claim of fraud.  Id. at 4.

Rule 60(d)(3) allows a court to "set aside a judgment for fraud on the court."  Fed. R. Civ. P. 60(d)(3).  "A proper Rule 60(d)(3) motion is one that 'attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings.'"  Cano v. United States, 796 F. App'x 647, 649 (11th Cir. 2019) (quoting Gonzalez v. Crosby, 545 U.S. 524, 532 (2005)).  On the other hand, a motion that attacks a "federal court's previous resolution of a claim on the merits," or which "seeks to add a new ground for relief" does not constitute a proper Rule 60(d)(3) motion, but rather a habeas petition under 28 U.S.C. § 2255.  Id.

The claims she sets forth in this Motion are not materially different from Lewis' contention Judge Wood and Judge Baker should have recused themselves in the criminal proceedings.  In addition, Lewis offers nothing more than conclusory allegations in this regard.  Further, this Court has yet to enter a final judgment in this collateral proceeding.  Accordingly, the Court should **DENY** Lewis' Rule 60(d)(3) Motion.

## VI.   Evidentiary Hearing Request, Doc. 10 at 12

Section 2255 does not require the Court hold an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]"  Winthrop-Redin v. United States, 767 F.3d 1210, 1216 (11th Cir. 2014) (quoting 28 U.S.C.

§ 2255(b)).  "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations.  Nor is a hearing required where the petitioner's allegations are affirmatively contradicted in the record."  Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citation omitted).  Moreover, a movant is not entitled to an evidentiary hearing where she asserts "merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible."  Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted); see also Lynn v. United States, 365 F.3d 1225, 1238–39 (11th Cir. 2004).  Because Lewis' claims lack merit as a matter of law or are otherwise affirmatively contradicted by the record, no evidentiary hearing is necessary.  Consequently, the Court **DENIES** Lewis' request for an evidentiary hearing.

## VII. Leave to Appeal *in Forma Pauperis* and Certificate of Appealability

The Court should also deny Lewis leave to appeal *in forma pauperis*.  Though Lewis has not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal.  Fed. R. App. P. 24(a)(3) (trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").  An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  An *in forma pauperis* action is frivolous and not brought in good

faith if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Additionally, under 28 U.S.C. § 2253(c)(1), an appeal cannot be taken from a final order in a habeas proceeding unless a certificate of appealability is issued.  Pursuant to Rule 11 of the Rules Governing Section 2255 cases, the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A certificate of appealability may issue only if the applicant makes a substantial showing of a denial of a constitutional right.  The decision to issue a certificate of appealability requires "an overview of the claims in the habeas petition and a general assessment of their merits."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  In order to obtain a certificate of appealability, a petitioner must show "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Id.  "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."  Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also Franklin v. Hightower, 215 F.3d 1196, 1199 (11th Cir. 2000).  "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims."  Miller-El, 537 U.S. at 336.

Based on the above analysis of Lewis' Motion and other filings and the Government's Response and applying the Certificate of Appealability standards set forth above, there are no discernable issues worthy of a certificate of appealability; therefore, the Court should **DENY** the issuance of a Certificate of Appealability.  If the Court adopts this recommendation and denies

31

Lewis a Certificate of Appealability, Lewis is advised she "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a), Rules Governing Section 2255 Cases in the United States District Courts. Furthermore, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, the Court should likewise **DENY** *in forma pauperis* status on appeal.

### CONCLUSION

For the above-stated reasons, I **RECOMMEND** the Court **DENY** Lewis' § 2255 Motion, as supplemented, and Rule 60(d)(3) Motion, **DIRECT** the Clerk of Court to enter the appropriate judgment of dismissal and **CLOSE** this case, and **DENY** Lewis *in forma pauperis* status on appeal and a Certificate of Appealability. I **DENY as moot** Lewis' Motion to Supplement, doc. 9, and **DENY** her request for an evidentiary hearing, doc. 10.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1191–92 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 977 F.3d at 1191–92; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in

whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 30th day of March, 2021.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA